IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kyle Boddie, Vernon Chatman, Zederick Dixon, Robert Farland, Terence Fennel, Rickey Howard, David McDaniel, Kurtis Morgan, Joshua Sanders, Anthony Smith, and Derrick Webster,<br><br>Plaintiffs,<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br><br>Defendant. | Case No.:<br><br>**(Jury trial demanded)** |

## COMPLAINT

The Plaintiffs and each of them, individually and on behalf of all others similarly situated by and through their attorneys hereby complain against the Defendant, BNSF RAILWAY COMPANY as follows:

## JURISDICTION AND VENUE

1. This is an action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§2000(e) et seq., as amended, and 42 U.S.C. §1981, to redress and enjoin employment practices by defendant Burlington Northern Santa Fe Railroad ("BNSF"). Venue is proper in the Northern District of Illinois because the actions complained of herein occurred in that district and defendant BNSF does business here.

2. Plaintiffs Anthony Smith, Rickey Howard, Kyle Boddie, and Joshua Sanders have fully complied with the procedural requirements of Title VII. They timely filed charges for discrimination within the procedural requirements of Title VII. They have received right-to-sue letters from the EEOC and brought this lawsuit within the applicable time period.

## PARTIES

3. Plaintiff, Kyle Boddie an African-American, is a resident of Cook County, Illinois. Mr. Boddie worked for BNSF from June 2014 to May 2019 in a variety of positions including Conductor in the Chicago Division, until his discharge on May 29, 2019.

4. Plaintiff, Vernon Chatman an African-American, is a resident of Cook County, Illinois. Chatman worked for BNSF from August 2011 in a variety of positions including Engineer in the Chicago Division, until his discharge in October, 2016. He was subsequently reinstated without back pay.

5. Plaintiff, Zederick Dixon an African-American, is a resident of Cook County, Illinois. Dixon began working for BNSF in August 2011, in a variety of positions including Conductor in the Chicago Division, until his discharge on March 27, 2019.

6. Plaintiff, Robert Farland an African-American, is a resident of Cook County, Illinois. Farland worked for BNSF from 2001 to the present in a variety of positions including Conductor in the Chicago Division.

7. Plaintiff, Terence Fennel an African-American, is a resident of Cook County, Illinois. Fennell worked for BNSF from 2004 to 2015, and reinstated in 2018, worked in a variety of positions including Engineer in the Chicago Division, until his discharge in or about June 2019.

8. Plaintiff, Rickey Howard an African-American, is a resident of Cook County, Illinois. Howard worked for BNSF in a variety of positions including Conductor in the Chicago Division.

9. Plaintiff, David McDaniel an African-American, is a resident of Cook County, Illinois. McDaniel worked for BNSF in a variety of positions including Conductor in the Chicago Division, until his discharge in March, 2018.

10. Plaintiff, Kurtis Morgan an African-American, is a resident of Cook County, Illinois.

Morgan worked for BNSF in a variety of positions including Conductor in the Chicago Division.

11. Plaintiff, Joshua Sanders an African-American, is a resident of Cook County, Illinois. Sanders worked for BNSF in a variety of positions including Conductor in the Chicago Division, until his discharge in August 2019.

12. Plaintiff, Anthony Smith an African-American, is a resident of Cook County, Illinois. Smith worked for BNSF from in a variety of positions including Engineer in the Chicago Division.

13. Plaintiff, Derrick Webster an African-American, is a resident of Cook County, Illinois. Smith worked for BNSF from in a variety of positions including Conductor in the Chicago Division.

14. Defendant BNSF Railway Company hereinafter referred to as "BNSF" is a Delaware corporation with multiple business locations within Cook County, the State of Illinois, and throughout the United States. At all material times hereto BNSF has been an employer within the meaning of 42 U.S.C. §2000e-5(b).

## CLASS ACTION ALLEGATIONS

15. Plaintiffs bring this action as a class action, on their own behalf and on behalf of all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedures.

16. The class, of which Plaintiffs are themselves members consists of all African-American employees of BNSF throughout its Chicago Division. The Chicago Division includes multiple worksites in the states of Wisconsin, Minnesota, Kentucky, and Illinois locations in the municipalities of Elwood, Cicero, Hodgkins, Chicago, and Eola who are, and were, adversely affected by BNSF's continuing discriminatory policies and practices of subjecting African-Americans to harsher, unfair, and not evenhanded discipline as compared to non African-American

employees.

17. The African-Americans in the class, estimated to be at least 50, are so numerous that joinder of all its members is impractical.

18. There are questions of law and fact common to the class that relate to and affect the rights of each member of the class and that predominate over any questions affecting only individual members. The common questions of law and fact include (a) has defendant violated Title VII and/or 42 U.S.C. §1981 by systematically discriminating against their African-American employees in the terms and conditions of their employment, in connection with discipline? (b) As a result of defendant's systematic discrimination, have plaintiffs and the class they represent suffered damages, including the loss of employment and benefits and/or the placing of plaintiffs on a disciplinary probationary status thereby resulting unwarranted emotional distress and related damages? (c) Does defendant's conduct make final injunctive relief appropriate with respect to the entire class?

19. The claims of the name plaintiffs, who are representatives of the class herein, are typical of the claims of the class, in that the claims of all members of the class, including plaintiffs, depend on a showing of the acts and omissions of defendant giving rise to the right of plaintiffs to the relief sought herein. As set forth below, the named plaintiffs have personally suffered from those practices that they allege have harmed the class as a whole.

20. There is no conflict between any individually named plaintiff and other members of the class with respect to this action, or with respect to the claims for relief herein set forth.

21. The named plaintiffs will fairly and adequately protect the interests of the class, and their lawyers are experienced in representing plaintiffs in cases of this type.

22. The defendant acted and refused to act on grounds generally applicable to the class,

thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class. A class action is superior to other available methods for the fair and efficient adjudication of the claims of the class plaintiffs.

23. Although some individual factual determinations concerning entitlement and extent of damages may exist for specific class members, the common factual and legal questions so clearly predominate that class treatment is appropriate. The class as a whole is entitled to injunctive relief to enjoin the unlawful policies and practices herein alleged and to declaratory relief. Each member of the class has been damaged and is entitled to recovery by reasons of the common, uniform, and unfair policies, practices, and procedures of BNSF. Finally, the amount of punitive damages is an issue common to the class.

## FACTS

24. Defendant BNSF operates a national freight transportation company with a rail network.

25. Each of the plaintiffs is, or has been, employed by defendant BNSF in its Chicago Division.

26. The Plaintiffs have been subjected to various forms of adverse actions as follows:

   a. Kyle Boddie, a Conductor, has been unfairly disciplined and subjected to a termination;

   b. Vernon Chatman, an Engineer, has been unfairly disciplined and subjected to a termination;

   c. Zederick Dixon, a Conductor has been unfairly disciplined and subjected to a termination.

   d. Robert Farland, a Conductor has been unfairly disciplined.

  e. Terence Fennell, an Engineer has been unfairly disciplined and subjected to a termination.

  f. Rickey Howard, a Conductor, has been unfairly disciplined.

  h. David McDaniel, a Conductor, has been unfairly disciplined and subjected to a termination.

  i. Kurtis Morgan, a Conductor, has been unfairly disciplined.

  j. Joshua Sanders, a Conductor has been unfairly disciplined and subjected to a termination.

  k. Anthony Smith, an Engineer has been unfairly disciplined.

  l. Derrick Webster, a Conductor has been unfairly disciplined.

28. In the mid-1970s there were many EEOC charges and then federal court complaints filed in this district as well as other districts throughout the country that alleged that BNSF discriminated against African-Americans in hiring and various other employment opportunities. As a result of that litigation, BNSF entered into consent decrees which were designed to remedy the racially discriminatory employment practices, including hiring practices. As a result, many more minorities after that time were hired.

29. Since that time, African-Americans who have been hired by BNSF have been subjected to other racially discriminatory practices that have been designed to sabotage their employment after becoming an employee, and in many cases force their separation of employment either through a retaliatory or racially motivated termination.

30. Once employed, plaintiffs have been subjected to a system of unequal discipline which is designed to cause African-Americans to be terminated from their employment and/or threatened with termination for perceived or alleged infractions. These same perceived or alleged

infractions do not result in significant or serious consequences, if any, for non-African-Americans.

31. This practice and system of unequal discipline is accomplished in a number of different ways, all of which have the same result, that is, to cause the termination and/or make termination likely for a particular African-American employee. These practices include the following:

    a. BNSF has a practice of offering a "waiver" to some employees who have been alleged to have committed a company infraction. This "waiver' practice is not set forth in BNSF's written policies, nor is it set forth in the Collective Bargaining Agreement (hereafter "CBA") that it has with the Union. According to the practice, when an employee has allegedly committed an infraction he/she can request a "waiver." This means that if the employee is granted a waiver, BNSF foregoes doing the required formal investigation and gives the employee an agreed upon (between the employee and BNSF) disciplinary penalty. The agreement to a "waiver" typically means that there would be no termination from employment or that the disciplinary penalty given would be less than what would occur if there was a formal investigation, otherwise an employee would never agree to accept a waiver. In exchange for waiver, the employee admits responsibility for the infraction. In practice, African-Americans are granted waiver much less frequently, if at all, than non-African-Americans. In some cases, Caucasion, but not African-Americans, are offered waiver without having to request it; in other cases African-Americans are denied waiver when requested, but other similarly situated employees would not be denied waiver; or in some

      cases, when granted "waiver" the penalty agreed upon is more severe for an African-American than it would be for a similarly situated non-African-American.

b.   BNSF also has a practice of ignoring violations of rules by non-African Americans but forcing formal investigations of similarly situated African-Americans.

c.   Without regard to waiver, BNSF also has a practice of determining that an event or action will result in discipline for an African-American, but would not result in discipline for a similarly situated non-African-American. Likewise, BNSF also has a practice of determining that a particular event or action will result in a more severe penalty for an African-American than it would for a similarly situated non African-American.

d.   When conducting investigations into alleged infractions, BNSF has a practice of conducting investigations of African-Americans in a way that is unfair and unequal to the way that investigations are done when similarly situated non-African-American employees are accused of violating a rule and then subject to an investigation.

    i.   For example, in the case of Derrick Webster, a hearing was conducted to discuss his alleged infraction with management from BNSF. The hearings are to be audio recorded for further use in the investigation. The hearing went well for Webster. However, the recording was subsequently destroyed and/or misplaced by Defendant so that it could not be used in further proceedings. The Defendant proceeded to engage in a "do over" of the

hearing and Plaintiff was not in attendance. Naturally, the subsequent hearing went more poorly than the original hearing.

32. Members of the class have engaged in protective action by complaining about the racial discrimination. They were subsequently retaliated against for having complained about the discrimination.

33. The named plaintiffs and the class they represent have been discriminated against in the ways set forth above. The named plaintiffs have personally suffered from these practices.

34. As a result of this discrimination, the plaintiffs and the class they represent have been damaged emotionally and /or financially and/or have been denied substantial employment opportunities and benefits.

35. BNSF did the acts herein alleged maliciously, fraudulently, and oppressively and with the wrongful intention of injuring Plaintiffs, and all other African-Americans who are similarly situated.

## COUNT I

**(Title VII of the Civil Rights Act, for Discrimination and Retaliation**

**42 U.S.C. §§2000e et seq.)**

36. Paragraphs 1-35 are incorporated by reference.

37. The foregoing conduct violates Title VII of the Civil Rights Act, 42 U.S.C. §§2000e et seq.

38. Plaintiffs have been personally subjected to discrimination and retaliation on the basis of race by defendants and they request relief as hereinafter provided.

## COUNT II

9

**(42 U.S.C. §1981)**

39. Paragraphs 1-35 are incorporated by reference.

40. The forgoing conduct constitutes illegal intentional discrimination, prohibited by 42 U.S.C. §1981, and Plaintiffs request relief as hereinafter provided.

## COUNT III

**(Injunctive Relief)**

42. Paragraphs 1-35 are incorporated by reference.

43. Defendant's discrimination against Plaintiffs and the class they represent is in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§2000(e) et seq., as amended, and 42 U.S.C. §1981.

44. By reason of Defendant's actions, Plaintiffs and the class they represent have suffered and will continue to suffer extreme hardship and actual and impending actual damage as set forth above.

45. Plaintiffs and the class they represent have no adequate or speedy remedy at law for the above-mentioned conduct of Defendant, and this action is the only means available to Plaintiffs and the class to ensure equal treatment of African-American employees of BNSF.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other African-Americans similarly situated, request, the following relief:

A. That the policies and practices of the Defendant complained of herein be adjudged, decreed and declared to be violative of the rights of the Plaintiffs and the class secured to them by Title VII of the Civil Rights Act, 42 U.S.C. §§2000(e) et seq., as amended, and 42 U.S.C. §1981.

B. That a permanent injunction be issued enjoining the Defendant from engaging in the

discriminatory practices complained of herein.

  C. That a permanent injunction be issued requiring that the Defendant adopts employment practices and policies in accord and conformity with the requirements of the Title VII of the Civil Rights Act, 42 U.S.C. §§2000 (e) et seq., as amended, and 42 U.S.C. §1981, and further requiring that Defendants adopt and initiate effective remedial actions to ensure equal treatment of their employees and applicants.

  D. That the Defendant be required to pay to the individual Plaintiffs and the class backpay with interest, in amounts to be proven at trial, and to employ and promote the Plaintiffs and the members of the class to positions each would have held absent Defendant's discrimination against them.

  E. That each Plaintiff and class member be granted compensatory damages in an amount to be determined at trial.

  F. That each Plaintiff and class member be granted punitive damages in an amount to be determined at trial.

  G. That the Court retain jurisdiction of this case until such time as it is assured that the Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law.

  H. That the Court grant to Plaintiffs and the class their reasonably incurred attorneys' fees, costs, and litigation expenses.

  I. That the Court grant such other and further relief as the Court may deem just or equitable.

              Respectfully submitted,

        s/Edward M. Fox
Edward M. Fox
ED FOX & ASSOCIATES, Ltd.
300 W Adams St, Ste 330
Chicago, IL 60606
(312) 345-8877
efox@efoxlaw.com

**PLAINTIFFS HEREBY REQUEST A TRIAL BY JURY**

BY:    s/ Edward M. Fox
Edward M. Fox
ED FOX & ASSOCIATES, LTD.
300 West Adams, Suite 330
Chicago, Illinois 60606
(312) 345-8877
efox@efoxlaw.com